**HEAD–OF–THE–LAKES BROADCASTING CO. v. FEDERAL COMMUNICATIONS COMMISSION (RED RIVER BROADCASTING CO., Intervener).**

No. 6473.

United States Court of Appeals for the District of Columbia.

Decided May 4, 1936.

Arthur W. Scharfeld, Reed T. Rollo, and Louis G. Caldwell, all of Washington, D. C., for appellant.

Hampson Gary, George B. Porter, and Fanney Neyman, all of Washington, D. C., for appellee.

Paul M. Segal and George S. Smith, both of Washington, D. C., for intervener.

Before MARTIN, Chief Justice, and VAN ORSDEL, GRONER and STEPHENS, Associate Justices.

MARTIN, Chief Justice.

An appeal from a decision of the Federal Communications Commission granting an application of a radio broadcasting station for permission to remove its station to a different location.

In January, 1934, the Red River Broadcasting Company, Inc., owned and operated a broadcasting station with call letters KGFK, located at Moorhead, Minn., with a power output of 100 watts and a frequency of 1,500 kilocycles, and with unlimited time of operation.

The corporation then filed an application with the Federal Radio Commission (since superseded by the Federal Communications Commission) for permission to remove its broadcasting station to the city of Duluth, Minn.; it being the purpose of the company to locate the station at Minnesota Point, which is a point of land projecting into the bay separating the cities of Duluth, Minn., and Superior, Wis.

The application requested no change in power or frequency of Station KGFK, nor in equipment. The corporation stated in its application that if its station should be removed to Duluth it would be able to render regular and dependable local service throughout that area and satisfy the demand of that locality for programs and local advertising, not at present available in that area.

A protest against this application was filed by the city of Moorhead, upon the ground that public interest, convenience, and necessity required the retention of Station KGFK in that city; that the station served Moorhead and the country adjacent thereto by broadcasting matters of local interest, particularly concerning the production and marketing of potatoes; Moorhead being one of the largest shipping points for potatoes in the United States, and the station being the only broadcasting station in the community publishing market reports of this kind. The protest also claimed that Station KGFK was rendering important service to large educational institutions and business interests in that city and that its removal from Moorhead would inflict grave injury upon the prosperity of the city.

It appears that the city of Moorhead is adjacent to the city of Fargo, N. D., being separated therefrom by the Red river, which at that point has a width of about 30 feet, and that Broadcasting Station WDAY is located in Fargo and operates with the power of 1 kilowatt, and upon a frequency of 940 kilocycles, but it is contended by the protestants that the interests of the several cities are competitive in character, and that Moorhead depends for its local news upon local Station KGFK, and that if this station be removed from Moorhead its place would not be filled by Station WDAY.

A protest against the allowance of the application of Station KGFK was also filed by the Head-of-the-Lakes Broadcasting Company which owned and operated Station WEBC located at Superior, Wis., operating with power of 1 kilowatt nighttime and 2½ kilowatts local sunset, on a frequency of 1,290 kilocycles, and with unlimited time of operation. In this protest the claim was made that Station WEBC would be adversely affected by the location of Station KGFK in Duluth for the following reasons, to wit, that the cities of Duluth, Minn., and Superior, Wis., are practically contiguous, comprising essentially a single community; that Station WEBC, located in Superior, had always been operated in a high-class and acceptable manner, giving the best possible service to Duluth and Superior, and devoting practically all of its income for necessary improvements, maintenance, upkeep, and to provide high-class programs for the benefit of its listening public; that if Station KGFK should be moved to Minnesota Point, as projected and operated there it would unavoidably compete with Station WEBC for the sale of advertising time, and that such competition would reduce the income of WEBC so that it would be operated at a loss; that the result necessarily would be that the character of its public service heretofore rendered to the public in Duluth, Superior, and the surrounding territory would be greatly reduced: that the capital stock of Station WEBC is owned and held by persons interested in the welfare of the city who have pursued a policy of maintaining its high standard programs and efficiency of operation to such an extent that the net profit from the station has been small; that there is insufficient demand for the use of broadcasting stations as advertising mediums in the Superior-Duluth area to warrant the operation of two stations in competition with one another in that area.

The issues so made were referred to an examiner, who heard the testimony of various witnesses and reported to the Commission recommending the granting of the application of Station KGFK for removal, upon the ground that this action would best serve the public interest, convenience, and necessity.

The Commission after full hearing approved the report of the examiner and granted the application of KGFK for a removal. The present appeal was then taken to this court under the provisions of section 402(e) of the Communications Act of 1934, 48 Stat. 1064, 47 U.S.C.A. § 402(e), reading as follows: "(e) At the earliest convenient time the court shall hear and determine the appeal upon the record before it, and shall have power, upon such record, to enter a judgment affirming or reversing the decision of the Commission, and in event the court shall render a decision and enter an order reversing the decision of the Commission, it shall remand the case to the Commission to carry out the judgment of the court: Provided, however, That the review by the court shall be limited to questions of law and that findings of fact by the Commission, if supported by substantial evidence, shall be conclusive unless it shall clearly appear that the findings of the Commission are arbitrary or capricious."

The record contains all of the testimony heard by the examiner and the Commission. In respect to the protest filed by the city of Moorhead it appears that Fargo has a population of about 28,000 and Moorhead a population of about 8,000. Station WDAY at Fargo is a regional station with a clear and satisfactory delivery of signals reaching to a distance of over 100 miles. Its signals are also distinctly heard in both Fargo and Moorhead. Its service has been generally satisfactory to the people of that neighborhood. Complaint has been made that its reports concerning the potato market were not sufficient and for a time were totally lacking. It is said, however, that in case of the removal of KGFK from Moorhead, Station WDAY will deliver satisfactory reports concerning this market. The capital stock of the Fargo station and the Moorhead station are owned in large part by the same persons. The Moorhead station has been operated at a loss and is without prospect of financial improvement within the near future. A number of the important and prominent citizens of Moorhead testified to the desire of that community that the station shall not be removed, claiming that local broadcasting of Moorhead by the Fargo station would not be adequate if such a removal takes place.

As to the protest of WEBC it appears that this station likewise is a regional station operated with one kilowatt of power; that it has operated at a financial profit in the past; that it sells a considerable part of its time to the large broadcasting chains

of the country, particularly the Columbia Broadcasting System; and that it may continue to operate profitably notwithstanding the competition of a purely local station, following the removal of KGFK to the location proposed by it. A large number of the more important and prominent citizens and residents of the Duluth-Superior area united in commending the service which Station WEBC had rendered for that territory, the high character of its programs, as well as the impartiality and fairness with which it had treated all classes of people in the community.

It appears that according to the census of 1930 there was in the Fargo-Moorhead area a population of 36,270; wholesale establishments, 108; number of persons employed in them, 1,318; net sales annually in the wholesale trade, $6,674,680; number of retail establishments, 567; number of persons employed in them, 2,346; annual net sales, $26,097,000. Whereas in the Duluth-Superior area the population in 1930 was 137,579; wholesale establishments, 218; number of persons employed in them, 4,038; net sales annually in wholesale trade, $232,982,515; number of retail establishments, 1,859; number of persons employed in them, 7,028; annual net sales $74,194,000.

The question before the Commission was whether the public interest, convenience, and necessity would be best served by maintaining the location of a regional station together with a local station in the Fargo-Moorhead area, with its limited commercial activities, and limited local interest, or by removing the local station from Moorhead to Duluth, to maintain in the Duluth-Superior area both a regional and a local station. Upon a consideration of all the evidence the Commission held that the most populous area with its commercial activities, and with correspondingly greater local patronage could best support both a regional and local station and that the public interest would best be served by such a location. It should be noted that no interference between the signals of WEBC and KGFK would result from their simultaneous broadcasting because of the wide difference in their frequency.

We think that this decision is sustained by substantial evidence and that it is not arbitrary or capricious, and accordingly it is hereby affirmed.

Affirmed.